IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JINSUN, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-13-1238 |
| | § | |
| ALIDAD MIRESKANDARI, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM, RECOMMENDATION, AND ORDER

Pending before the court[1] are Defendant Alidad Mireskandari's Motion for Summary Judgment (Doc. 126), Plaintiff Jinsun, LLC's Motion for Partial Summary Judgment (Doc. 127), and Jinsun's Motion for Jury Trial Setting (Doc. 141).  The court has considered the motions, the responses, all other relevant briefing, and the applicable law.  For the reasons set forth below, the court **RECOMMENDS** that Alidad's motion for summary judgment be **GRANTED IN PART** and **DENIED IN PART**, and Jinsun's motion for partial summary judgment be **GRANTED IN PART** and **DENIED IN PART**.  Jinsun's motion for a jury trial setting is **GRANTED** with respect to the parties' surviving claims.

### I.  Case Background

Plaintiff Jinsun LLC, ("Jinsun") filed this action against Defendant Alidad Mireskandari ("Alidad") alleging breach of

---

[1]     This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  Doc. 29.

contract, fraud, and other related claims arising from Alidad's efforts to raise equity funding for Luxeyard, Inc. ("Luxeyard"). Alidad counterclaimed and brought third-party claims against Kevan Casey and Far East Strategies, LLC, for breach of contract, quantum meruit, fraud, fraud in the inducement and alter ego.[2]

## A. **Factual Background**

Luxeyard was a flash sales website, first launched in 2011 by Alidad's brother, Amir Mireskandari, ("Amir") to sell furniture and clothing.[3]  Amir served as chairman of Luxeyard's board of directors.[4]  Luxeyard soon required additional corporate funding, and Amir sought financial advice from Frederick Huttner ("Huttner").[5]  By September 2011, Huttner had introduced Amir to Kevan Casey ("Casey"), the managing director of Far East Strategies.[6]  Casey proposed taking Luxeyard public by merging Luxeyard with a non-operating "shell" corporation.[7]

In October 2011, Casey notified the attorney setting up the merger that twenty individuals and entities would be receiving stock in the new company and that three on the list would not be

---

[2]    See Doc. 23, Def.'s Am. Ans. & Countercl. pp. 9-11.

[3]    See Doc. 128-2, Ex. C to Pl.'s Mot. for Partial Summ. J., Dep. of Alidad pp. 54-55.

[4]    See Doc. 126-3, Ex. 1-B to Def.'s Mot. for Summ. J., Luxeyard Bd. of Dirs.' Consent.

[5]    See Doc. 138, Def.'s Resp. to Pl.'s Mot. for Summ. J. p. 7.

[6]    Id.

[7]    Id. p. 8.

paying for their shares, but would receive shares in exchange for services.[8]  Jinsun, another company managed by Casey, purchased 5,387,000 shares of Luxeyard for $42,500.

It appears that the merger was completed some time in January 2012.[9]  By February 2012, Luxeyard was experiencing cash flow problems and required additional cash infusions.[10]

Alidad testified that at some point in early 2012, he entered into an oral contract with Jinsun, represented by Casey, to locate investors on behalf of Luxeyard.[11]  In furtherance of that agreement, Alidad avers, he located several investors between February and March 2012.[12]  In exchange for finding investors and providing consulting services, Alidad testified Jinsun, through Casey, agreed to pay him $500,000 and issue to him 430,000 shares of Luxeyard stock.[13]

Jinsun disputes that Alidad was retained as a consultant at

---

[8]    See Doc. 138-7, Ex. 7 to Def.'s Resp. to Pl.'s Mot. for Summ. J., Email from Kevan Casey to Gregg Jaclin p. 1.  The Brompton Group, NA, LLC, Lazy Bear, LLC, and Jonathan Camarillo Trust received stock for services.  Id. p. 2.

[9]    See Doc. 138-10, Ex. 10 to Def's Resp. to Pl.'s Mot. for Summ. J., Email to Amir from Eric Stein Dated Jan. 30, 2012 p. 124.

[10]    Id. pp. 128-131.  Alidad testified that he loaned Amir between $60,000 and $70,000 in the Spring-Summer 2012 time frame.  See Doc. 128-2, Ex. C to Pl.'s Mot. for Partial Summ. J., Dep. of Alidad p. 33.

[11]    See Doc. 128-2, Ex. C to Pl.'s Mot. for Partial Summ. J., Dep. of Alidad pp. 41-42.

[12]    See id. p. 45.  Alidad testified that he brought three investors and $275,000 to $300,000 to Luxeyard:  Kyle Rusconi ($125,000), Arash Emammi ($100,000) and Ramin Ghobadi ($50,000 or $75,000).  Id.

[13]    See id. pp. 47-48, 141-43.

that time.  Instead, Casey avers that Jinsun and Alidad entered into an oral stock purchase agreement, whereby Alidad agreed to purchase 430,000 shares of Jinsun's Luxeyard stock for $64,500.[14]

On April 12, 2012, Luxeyard's board of directors agreed to issue Alidad 187,000 Luxeyard shares in exchange for consulting services.[15]  On April 25, 2012, Jinsun instructed Luxeyard's transfer agent to transfer 100,000 shares of Luxeyard stock to Alidad.[16]  An additional 50,000 shares were also issued to Alidad in the same time frame.[17]

On May 22, 2012, Amir requested that Jinsun sign a written stock purchase agreement confirming the sale of 280,000 shares of Luxeyard stock to Alidad.[18]  Casey signed the agreement, transferred the stock, and sent the agreement to Alidad, copying Amir on the

---

[14]    See Doc. 137-1, Ex. 1 to Pl.'s Resp. to Def.'s Mot. for Summ. J., Aff. of Casey pp. 1-2.

[15]    See Doc. 126-3, Ex. 1-B to Def.'s Mot. for Summ. J., Luxeyard Bd. of Dirs.' Consent pp. 1-2.  The consulting agreement between Alidad and Luxeyard is referenced in the Board minutes but not attached to the exhibit.  During Alidad's deposition, he testified that he did not receive this Luxeyard stock from Luxeyard or his brother.  See Doc. 128-2, Ex. C to Pl.'s Mot. for Partial Summ. J., Dep. of Alidad pp. 51-52.

[16]    See Doc. 137-1, Ex. 1 to Pl.'s Resp. to Def.'s Mot. for Summ. J., Aff. of Casey, p. 1.

[17]    See id.  At his deposition, Alidad testified that he received 280,000 shares of Luxeyard in May 2012 from Jinsun and did not receive this 150,000 block of Luxeyard shares from Luxeyard.  See Doc. 128-2, Ex. C to Pl.'s Mot. for Partial Summ. J., Alidad's Dep. pp. 155, 191.

[18]    See Doc. 137-1, Ex. 1 to Pl.'s Resp. to Def.'s Mot. for Summ. J., Aff. of Casey, p. 2.

transmitting email.[19]  That proposed agreement showed the purchase price of the 280,000 shares to be $42,000.[20]  However, Alidad failed to sign the agreement and failed to pay Jinsun as Jinsun alleges Alidad had agreed.[21]  Alidad testified that he did not sign the agreement because it did not reflect the entirety of what he believed was the oral agreement between himself and Jinsun.[22]

On June 4, 2012, Casey received an email from Alidad, asking for a proposal for consulting work based on an earlier discussion.[23] The following day, Casey received an email from Alidad invoicing Jinsun for consulting services in the amount of $500,000.[24]  Jinsun paid Alidad $150,000.[25]

Casey testified that he expected to pay Alidad a ten-percent commission on capital raised by Alidad.[26]  Jinsun characterized the

---

[19]    See Doc. 137-3, Ex. 1-3 to Pl.'s Resp. to Def.'s Mot. for Summ. J., Email Dated May 23, 2012.

[20]    See Doc. 137-3, Ex. 1-1 to Pl.'s Resp. to Def's Mot. for Summ. J., Stock Purchase Agreement p. 1.

[21]    See id.

[22]    See Doc. 128-2, Ex. C to Pl.'s Mot. for Partial Summ. J., Dep. of Alidad p. 97.

[23]    See Doc. 128, Ex. A-4 to Pl.'s Mot. for Partial Summ. J., Email Dated June 4, 2012;  see also Doc. 137-1, Ex. 1 to Pl.'s Resp. to Def.'s Mot. for Summ. J., Aff. of Casey p. 2.

[24]    See Doc. 137-3, Ex. 1-5 to Pl.'s Mot. for Partial Summ. J., Email Dated June 5, 2012.

[25]    See Doc. 137-1, Ex. 1 to Pl.'s Resp. to Def.'s Mot. for Summ. J., Aff. of Casey p. 2.

[26]    See Doc. 138-1, Ex. 1 to Def.'s Resp. to Pl.'s Mot. for Summ. J., Dep. of Casey, p. 307.

$150,000 payment as an advance on the June oral consulting agreement.[27]  Alidad maintained it was in partial payment for the earlier March/April consulting agreement in the amount of $500,000.[28]  On June 27, 2012, Casey sent an email to Alidad purporting to confirm that Alidad had "not performed any services to date."[29]  Jinsun terminated the oral consulting agreement, and Alidad refused to return any of the money to Jinsun.[30]

Also in June 2012, Casey, representing Jinsun, and Amir, representing Luxeyard, and Huttner signed a mutual release and settlement agreement ("First Settlement Agreement"), stating, in relevant part, "This Agreement shall settle any disputes among the Parties related, directly or indirectly, to Luxeyard and shall supercede all of the prior agreements (oral or written) among the Parties.[31]  The agreement also provided:

> . . .
>
> Casey hereby releases and forever discharges Luxeyard, [Amir], and Huttner and their respective officers, directors, employees, shareholders, heirs and agents ever had, now has or hereafter can, shall, or may have for, upon or by reason on of any matter, event, cause, claims, demands, actions or proceedings, causes of action,

---

[27]   Id.

[28]   See Doc. 128-2, Ex. C to Pl.'s Mot. for Partial Summ. J., Dep. of Alidad p. 195.

[29]   See Doc. 128, Ex. A-6 to Pl.'s Mot. for Partial Summ. J., Email Dated June 27, 2012.

[30]   See id.

[31]   See Doc. 126-2, Ex. 1-A to Def.'s Mot. for Summ. J., Mut. Release & Settlement Agreement.

> orders, obligations, contracts, agreements, debts and
> liabilities whatsoever from the beginning of the world
> whether known or unknown, suspected or unsuspected,
> asserted or unasserted, under any federal or state
> statute or common law including, but not limited to, any
> claim related to or arising out of this Agreement.[32]

The Agreement provided no additional detail concerning the dispute that had arisen between Amir, Jinsun and Huttner.  Alidad testified that he believed that the dispute concerned Huttner's failure to honor his commitment to Amir to raise money for Luxeyard.[33]

On August 16, 2012, Amir filed suit in state court against Jinsun and several other investors, alleging that Jinsun, Casey, and others engaged in a "pump and dump" scheme whereby the defendants artificially inflated the value of Luxeyard stock and then sold their shares once the stock reached a certain value.[34] Amir also alleged that Casey, Huttner and others conspired to defraud Amir and Luxeyard.[35]

On August 20, 2012, the case was removed to this court and docketed as H-12-2480.[36]  On September 7, 2012, a Third Amended Complaint was filed by Amir and Luxeyard against seventeen defendants, accusing them of fraud, breach of contract, breach of

---

[32]   Id.

[33]   See Doc. 128-2, Ex. C to Pl.'s Mot. for Partial Summ. J., Alidad's Dep. pp. 82-83.

[34]   See Mireskandari v. Gann et. al., No. H:12-cv-02480, Doc. 1, Defs.' Notice of Removal.

[35]   See Doc. 1-1, Ex. 1 to Def.'s Notice of Removal, Pls.' Orig. Compl. pp. 2, 6-8.

[36]   See id.

7

fiduciary duties, violations of United States and Texas securities laws, and conspiracy.[37] The complaint set forth Amir and Luxeyard's allegations that the defendants engaged in a pump and dump scheme with regard to Luxeyard stock, engaged in insider trading and defrauded shareholders.[38]   On September 21, 2012, the parties entered into a settlement agreement ("Second Settlement Agreement").[39]

The Second Settlement Agreement stated:

[T]he term "the Company" refers to and includes
[Luxeyard], as well as any and all of its attorneys,
directors, officers, employees, representatives, agents,
subsidiaries, division, corporate affiliates, consignees,
successors, heirs and assigns, and all other persons,
firms, corporations, limited liability companies, and
employees whom any of the former have been, are now, or
may hereafter be affiliated as it relates in any way to
the Dispute, the term "the Company" does not include
Khaled Al Attar.

. . .

[T]he term [Amir] refers to [Amir] and includes past,
present and future attorneys, personal representatives,
agents, servants, representatives, employees,
subsidiaries, affiliates, partners, predecessors and
successors in interest, heirs and assigns and all other
persons, firms, corporations, trusts, trustees, limited
liability companies, spouses, and employees with whom any
of the former have been, are now, or may hereafter be
affiliated as it relates in any way to the Dispute.

. . .

---

[37]    See Doc. 37, Pl.'s 3rd Am. Compl.

[38]    Id.

[39]    See Doc. 126-4, Ex. 1-C to Def.'s Mot. for Summ. J., Confidential
Settlement Agreement & Mut. Release ("1st Settlement Agreement").

For and in consideration of the release . . . [Jinsun] .
. . does hereby waive, release, remise, covenant not to
sue, and forever discharge, [Luxeyard] . . . and [Amir],
jointly and severally, of and from all manner of action,
causes of action, suits, debts, dues, sums of money,
accounts, invoices, bills of lading, reckonings, bonds,
bills, covenants, contracts, controversies, agreements,
promises, damages, expenses, claims, attorneys' fees and
demands whatsoever, existing on, or at any time prior to
the date hereof, in law, in equity, or otherwise, whether
now known or unknown, including economic loss or expense
of any type, lost income or compensation, punitive
damages, attorneys' fees, costs, interest, penalties,
sanctions and consequential damages or any other type of
damages of any other type of statute or regulation, or
any other theory of recovery or responsibility or any
other claim or cause of action of any type. . . .[40]

## B.  **Procedural History**

Six months earlier, on March 11, 2013, Jinsun filed this
lawsuit in Harris County, Texas, alleging breach of contract,
fraud, fraud in the inducement, and conversion.[41]  Jinsun also
sought an accounting.[42] On April 30, 2013, Alidad removed the case
to this court and counterclaimed against Jinsun.[43]

Jinsun seeks return of the $150,000 consulting fee paid to
Alidad, breach of contract damages for Alidad's failure to pay for
280,000 shares of stock, and fraud damages in the approximate
amount of $530,000, the amount of Alidad's profit when he sold the

---

[40]    See Doc. 126-4, Ex. 1-C to Def.'s Mot. for Summ. J., Confidential
Settlement Agreement & Mut. Release.

[41]    See Doc. 126-4, Ex. 1-C to Def.'s Mot. for Summ. J., Confidential
Settlement Agreement and Mut. Release ("2nd Settlement Agreement").

[42]    See id.

[43]    See Doc. 1, Def.'s Not. of Removal; Doc. 23, Alidad's Am. Answer &
Countercl.

Luxeyard shares.

Alidad counters that Jinsun released all claims against him when it signed the First and Second Settlement Agreements. He also claims that he is owed an additional 150,000 shares of Luxeyard stock and $308,000 for consulting services.

## II.   Legal Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir. 2003). A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001). To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party. Anderson, 477 U.S. at 250; TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues. Celotex

Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992).   If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment.   Celotex Corp., 477 U.S. at 322.   In response to a showing of lack of evidence, the party opposing summary judgment must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating that genuine issues of material fact do exist that must be resolved at trial.   Id. at 324.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party."   Evans v. City of Houston, 246 F.3d 344, 348 (5th Cir. 2001); see also Boston Old Colony Ins. Co. v. Tiner Assocs. Inc., 288 F.3d 222, 227 (5th Cir. 2002).   The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence."   Honore v. Douglas, 833 F.2d 565, 567 (5th Cir. 1987).

On cross-motions for summary judgment, the court reviews each party's motion independently, viewing the evidence in the light most favorable to the nonmoving party, as each movant bears the burden of proving that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.   Tidewater, Inc. v. United States, 565 F.3d 299, 302 (5th Cir. 2009); Shaw

11

<u>Constructors v. ICF Kaiser Eng'rs, Inc.</u>, 395 F.3d 533, 538-39 (5th Cir. 2004).

### III.   Analysis

Alidad asserts that Jinsun is precluded from pursuing claims against him because the First and Second Settlement Agreements released him from all claims, and, in the alternative, he is entitled to summary judgment on Jinsun's non-contract claims. Jinsun argues that summary judgment evidence establishes its right to judgment on its breach of contract claims and several of Alidad's defenses.

### A.   Alidad's Objections to Jinsun's Affidavit

Jinsun's response to Alidad's motion for summary judgment includes an affidavit by Casey.[44]   Alidad objects to several of Casey's statements, arguing that they are self-serving, unsupported, conclusory, speculative, and not the best available evidence.[45]   Jinsun responds that Casey's affidavit is competent summary judgment evidence.[46]

Federal Rules of Civil Procedure ("Rule") 56(c)(4) governs the submissions of affidavits.   Under the rule, an affidavit must be made on personal knowledge, set out facts that would be admissible, and show that the affiant is competent to testify on the matters

---

[44]   <u>See</u> Doc. 137-1, Ex. 1 to Pl.'s Resp. to Def.'s Mot. for Summ. J., Aff. of Kevan Casey pp. 4-5.

[45]   <u>See</u> Doc. 139, Def.'s Objections to Pl.'s Summ. J. Evidence pp. 2-9.

[46]   <u>See</u> Doc. 140, Pl.'s Surreply to Def.'s Objections.

stated.  Fed. R. Civ. Pro. 56(c)(4).  Conclusory allegations are not sufficient evidence to create a fact issue.  Travelers Ins. Co. v. Liljeberg Enters., Inc., 7 F.3d 1203, 1207 (5th Cir. 1993).

Casey's affidavit makes multiple legal conclusions as well as factual averments that appear to have been made without personal knowledge.  The court **SUSTAINS** Alidad's objections to Paragraphs Three (opining about Amir's agent-authority), Four (speculating about Alidad's enjoyment of ownership of 150,000 shares of Luxeyard stock), Five (speculating about Alidad's enjoyment of ownership of 280,000 shares of Luxeyard stock and a offering the legal conclusion that Jinsun had fully performed on a contract), Six (stating that there was a freeze on Amir's brokerage account without explaining the basis for his personal knowledge) Nine through Eleven (speculating that Alidad had no intention to pay and had a fraudulent intent), Twelve (offering legal conclusions and averments about Alidad's sale of stock without explaining the basis for his personal knowledge), and Twenty-Five (offering legal opinion that Amir violated the First Settlement Agreement).  The court will not consider these paragraphs in its analysis.

Alidad additionally objects to Casey's testimony relating to a phone call between himself and Alidad under the best evidence rule.[47]  Alidad argues that Jinsun has a transcription of the recording of the call and that it should have been offered into

---

[47]    See Doc. 139, Def.'s Objections to Pl.'s Summ. J. Evidence p. 7.

evidence.[48]   The "best evidence rule," Federal Rule of Evidence 1002, requires the original recording in order to prove its content.   The rule is relevant when the terms of a writing or recording are being established, not when the offered testimony is based on personal knowledge.   In re Mobilift Equip. of Fla., Inc., 415 F.2d 841, 844 (5ᵗʰ Cir. 1969).   Here, Casey is testifying about a telephone conversation he had with Alidad.   He thus has personal knowledge of the call and Alidad's objection is **OVERRULED**.

**B.   Alidad's Motion for Summary Judgment**

Alidad moves for summary judgment on several grounds, first arguing that Jinsun released all claims against him when it signed the First and Second Settlement Agreements.   Alidad also claims that he is entitled to summary judgment on Jinsun's non-contractual claims.

**1.   Settlement Agreements**

Alidad argues that Jinsun's settlement agreements release Alidad from any liability to Jinsun as a matter of law.   Jinsun responds that Alidad is not a signatory to either the First or Second Settlement Agreement, that the settlement agreements do not resolve the claims asserted in this case, that some of Jinsun's claims matured following the First Settlement Agreement, and that Alidad's counterclaim proves that the First Settlement Agreement does not release Alidad.

---

[48]   See id. pp. 7-8.

14

A settlement agreement is a contract, and, once entered into, cannot be repudiated by any party and will be summarily enforced by the court. White Farm Equip. Co. v. Kupcho, 792 F.2d 526, 530 (5th Cir. 1986). In determining the validity and effect of a settlement agreement, the court reviews the communications between the parties in light of state contract law. See id.; Hernandez v. Telles, 663 S.W.2d 91, 93 (Tex. App.—El Paso 1983). Under Texas contract law, the court's interpretation derives from the parties' intentions as expressed in the agreement. See Mid-Continent Cas. Co. v. Chevron Pipe Line Co., 205 F.3d 222, 231 (5th Cir. 2000).

Absent any ambiguity in the terms or any factual issue with regard to agreement, the interpretation of a settlement agreement can be decided as a matter of law. E. Energy, Inc. v. Unico Oil & Gas, Inc., 861 F.2d 1379, 1380 (5th Cir. 1988). An agreement is ambiguous only if, in light of the surrounding circumstances, it is reasonably susceptible to more than one meaning. Mid-Continent Cas. Co., 205 F.3d at 231.

When considering the nature of a release, the court's primary concern is to give effect to the written expression of the parties' intent. Forbau v. Aetna Life Ins. Co., 876 S.W.2d 132, 133 (Tex. 1994). Unambiguous words are considered to "express the intention of the parties, because objective, not subjective, intent controls." Derr Constr. Co. v. City of Houston, 846 S.W.2d 854, 861 (Tex. App.—Houston [14th Dist.] 1992).

15

The First Settlement Agreement provided that it was an agreement between Luxeyard, Amir, Casey, Jinsun, Huttner and Huttner 1999 Partnership, collectively defined as the "Parties."[49] The First Settlement Agreement further stated in relevant part:

> This Agreement shall settle any disputes among the Parties related, directly or indirectly, to Luxeyard and shall supercede all of the prior agreements (oral or written) among the Parties.
> . . .
> Casey hereby releases and forever discharges Luxeyard, [Amir], and Huttner and their respective officers, directors, employees, shareholders, heirs and agents ever had, now has or hereafter can, shall, or may have for, upon or by reason on of any matter, event, cause, claims, demands, actions or proceedings, causes of action, orders, obligations, contracts, agreements, debts and liabilities whatsoever from the beginning of the world whether known or unknown, suspected or unsuspected, asserted or unasserted, under any federal or state statute or common law including, but not limited to, any claim related to or arising out of this Agreement.[50]

Alidad has moved for summary judgment on this agreement; therefore, he bears the burden of establishing, as a matter of law, that the unambiguous language of the First Settlement Agreement operates as a release to him.  He claims he is released based on his status as a Luxeyard shareholder, a Luxeyard agent and/or Amir's agent.

Alidad has submitted summary judgment evidence showing that he was issued 280,000 Luxeyard shares by Jinsun in May 2012 and therefore falls within the First Settlement Agreement's release

---

[49]    Doc. 126-2, Ex. 1-A to Def.'s Mot. for Summ. J., Mut. Release & Settlement Agreement pp. 1-2.

[50]    <u>Id.</u>

based on his status as a Luxeyard shareholder.[51]

Jinsun argues that claims not clearly within the subject matter of the release are not discharged. See Victoria Bank & Trust Co. v. Brady, 811 S.W.2d 931, 938 (Tex. 1991)(stating that any claims not clearly within the subject matter of the release are not discharged). The court agrees, in part. The First Settlement Agreement fails to define the dispute between the parties; so, while the court may assume that Jinsun, Luxeyard and Huttner intended to settle their disputes in the First Settlement Agreement, the court cannot determine from the First Settlement Agreement what those disputes were. The First Settlement Agreement is ambiguous.

Jinsun also argues that, because the disputed consulting agreement took place after the First Settlement Agreement was finalized, the First Settlement Agreement's release cannot apply to this case. This argument has some superficial appeal, however, because the First Settlement Agreement is not dated, the court cannot find, as a matter of undisputed fact, that any portion of the present dispute arose after its signing. Jinsun's argument fails.

More importantly and fatally, Alidad, as the movant, has failed to show, as a matter of law and undisputed fact, that

---

[51]    Alidad has not established as a matter of undisputed fact that he was an agent of either Luxeyard or Amir.

Jinsun's present claims arose out of Alidad's status as a Luxeyard shareholder, a Luxeyard agent or Amir's agent and therefore fall within the First Settlement Agreement's release.  Even if Alidad were permitted to introduce parol evidence to illuminate the scope of the First Settlement Agreement's dispute, it appears undisputed that Alidad has not been sued by Jinsun based on claims arising out of his status as a Luxeyard shareholder, Luxeyard agent, or agent of Amir.

Alidad's motion for summary judgment must be **DENIED** with respect to the First Settlement Agreement.  Alidad's arguments with respect to the Second Settlement Agreement fare no better.

The Second Settlement Agreement stated:

[T]he term "the Company" refers to and includes [Luxeyard], as well as any and all of its attorneys, directors, officers, employees, representatives, agents, subsidiaries, division, corporate affiliates, consignees, successors, heirs and assigns, and all other persons, firms, corporations, limited liability companies, and employees whom any of the former have been, are now, or may hereafter be affiliated as it relates in any way to the Dispute, the term "the Company" does not include Khaled Al Attar.

. . .

[T]he term [Amir] refers to [Amir] and includes past, present and future attorneys, personal representatives, agents, servants, representatives, employees, subsidiaries, affiliates, partners, predecessors and successors in interest, heirs and assigns and all other persons, firms, corporations, trusts, trustees, limited liability companies, spouses, and employees with whom any of the former have been, are now, or may hereafter be affiliated as it relates in any way to the Dispute.

. . .

> For and in consideration of the release . . . [Jinsun] .
> . . does hereby waive, release, remise, covenant not to
> sue, and forever discharge, [Luxeyard] . . . and [Amir],
> jointly and severally, of and from all manner of action,
> causes of action, suits, debts, dues, sums of money,
> accounts, invoices, bills of lading, reckonings, bonds,
> bills, covenants, contracts, controversies, agreements,
> promises, damages, expenses, claims, attorneys' fees and
> demands whatsoever, existing on, or at any time prior to
> the date hereof, in law, in equity, or otherwise, whether
> now known or unknown, including economic loss or expense
> of any type, lost income or compensation, punitive
> damages, attorneys' fees, costs, interest, penalties,
> sanctions and consequential damages or any other type of
> damages of any other type of statute or regulation, or
> any other theory of recovery or responsibility or any
> other claim or cause of action of any type. . . .[52]

The Second Contract Agreement released Amir, Luxeyard, and their "attorneys, directors, officers, employees, representatives, agents, subsidiaries, division, corporate affiliates, consignees, successors, heirs and assigns, and all other persons, firms, corporations, limited liability companies, and employees."[53] Notably, it does not purport to release Luxeyard shareholders, therefore Alidad must show as a matter of undisputed fact that he falls within the description of the released parties.  This, he has failed to do.  The summary judgment evidence contains no evidence that Alidad is an officer or employee of Luxeyard, and there is insufficient evidence from which the court could conclude that Alidad fell into any other category.

The Second Settlement Agreement released all claims that "were

___

[52]   See Doc. 126-4, Ex. 1-C to Def.'s Mot. for Summ. J., Confidential Settlement Agreement & Mut. Release.

[53]   See id. pp. 3-4.

asserted or could have been asserted in connection with the Dispute and the facts, circumstances, allegations, and controversies related or giving rise thereto."[54]

In <u>Victoria Bank</u>, 811 S.W.2d at 938, the Texas Supreme Court found that a settlement agreement that released a party from "any and all claims and causes of action," "directly or indirectly attributable to the above-described loan transaction," related only to the initial loan described and did not release any claims relating to a subsequent line of credit. <u>Id.</u> at 938-39. In so finding, the court considered the settlement agreement as a whole and in light of the surrounding circumstances and concluded that the line of credit was a separate transaction not mentioned in the settlement agreement and therefore not within the release's coverage. <u>Id.</u> The court stated, "Although a valid release may encompass unknown damages, results or claims that may develop in the future, claims that are not clearly within the subject matter of the release are not discharged, even if they existed when the release was executed." <u>Id.</u> at 938.

Applying the same principles, this court finds that Jinsun's present claims against Alidad do not fall in the "asserted or could have been asserted" language of the Second Settlement Agreement's release. While Jinsun's claims against Alidad may have had their

---

[54]     <u>See</u> Doc. 126-4, Ex. 1C to Def.'s Mot. for Summ. J., Confidential Settlement Agreement & Mut. Release p. 10.

genesis in Luxeyard's attempt to obtain capital infusions, Jinsun's claims for breaches of stock purchase and consulting agreements are not clearly within the subject matter of the Second Settlement Agreement.  Alidad has failed to show, as a matter of undisputed fact and law that Jinsun's claims were asserted or could have been asserted against Alidad, a non-party, in that suit.  Alidad's motion for partial summary judgment based on Jinsun's alleged release of claims in the Second Settlement Agreement should be **DENIED**.

### 2. Alidad's Motion on Jinsun's Non-Contract Claims

In the alternative, Alidad argues that Jinsun is barred from recovering under a conversion theory and has not presented evidence necessary to support its fraud, fraud-in-the-inducement or constructive-trust actions.  Alidad further argues that Jinsun is not entitled to an accounting.  Jinsun responds that conversion is a proper alternative cause of action to breach of contract and that it has offered sufficient evidence to maintain its other claims.

#### a. Conversion

Alidad argues that Jinsun's conversion claim cannot stand because it is based on facts identical to Jinsun's contract claims.

In Texas, a conversion claim has four elements:

(1) plaintiff owned, had legal possession of, or was entitled to possession of the property; (2) defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with plaintiff's rights;

(3) plaintiff made a demand for the property; and (4) defendant refused to return the property.

Allan Reuber Chevrolet, Inc. v. Grady Chevrolet, Ltd., 287 S.W.3d 877, 888 (Tex. App.—Dallas 2009).

However, under the independent injury rule, a defendant's conduct must independently give rise to liability outside of a contractual relationship.  Exxon Mobil Corp. v. Kinder Morgan Operating L.P. "A", 192 S.W.3d 120, 126-27 (Tex. App.—Houston [14th Dist.] 2006).  If a plaintiff's claim relies only on the breach of an agreement, the plaintiff's claim sounds only in contract.  Sw. Bell Tel. Co. v. DeLanney, 809 S.W.2d 493, 494 (Tex. 1991).  The nature of the plaintiff's claimed injury determines whether the breached duty lies in contract or in tort.  Jim Walter Homes, Inc. v. Reed, 711 S.W.2d 617, 618 (Tex. 1986).  "When the only loss or damage is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract."  Exxon Mobil Corp., 192 S.W.3d at 128.

Here, Jinsun alleges that Alidad received stock without paying for it, in breach of an oral agreement.  Alidad's alleged tortious conduct is the possession and eventual sale of stock without paying as promised in an oral agreement.  In response to Alidad's argument that Jinsun's conversion claim violates the independent injury rule, Jinsun responds by stating that it is entitled to plead in the alternative and has alleged the elements of a conversion claim.

Jinsun's response misses the point: it has not contested that

its damages result from Alidad's alleged breach of an oral agreement, and it has failed to allege facts to support a claim that Alidad's conduct was independently tortious. The court concludes that Jinsun's claims sound in contract rather than tort, and its conversion claim is thus barred by the independent injury rule. The court therefore **RECOMMENDS** that Alidad's motion be **GRANTED** as to Jinsun's conversion claim.

### b. Fraud and Fraud in the Inducement

Alidad maintains that Jinsun has not established sufficient evidence to maintain a fraud or fraud-in-the-inducement claim. Jinsun responds that it has properly alleged both claims.

"To state a claim of fraud by misrepresentation under Texas law, a plaintiff must sufficiently allege (1) a [material] misrepresentation that; (2) the speaker knew to be false or made recklessly; (3) with the intention to induce the plaintiff's reliance, followed by; (4) actual and justifiable reliance; (5) causing injury." Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P., 620 F.3d 465, 468 (5th Cir. 2010) (citing Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co., 51 S.W.3d 573, 577 (Tex. 2001)). For a statement to be fraudulent, the speaker must know either that it was false when made or that the statement is made recklessly without regard for the truth. Prudential Ins. Co. v. Jefferson Assocs., 896 S.W.2d 156, 163 (Tex. 1995). "Proof that a defendant made a statement knowing of its falsity or without

knowledge of its truth may be proved by direct or circumstantial evidence." Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc., 962 S.W.2d 507, 526 (Tex. 1998).

Here, Jinsun has alleged that Alidad made a material misrepresentation when he promised to pay for Luxeyard stock, that he knew that the representation was false or made it recklessly, that Alidad intended for Jinsun to act on his representation, and that Jinsun did act on Alidad's representation.

Alidad argues that Jinsun cannot prove that Alidad knew that his promise to pay was false or made with reckless disregard of the truth at the time he made it as a matter of law. In response, Jinsun simply repeats the allegations made in its complaint. When Casey was asked at his deposition what evidence Jinsun had regarding Alidad's intent, Casey responded "he never has paid me for the stock."[55]

The economic loss rule precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract. Lamar Homes, Inc. v. Mid-Continent Cas. Co., 242 S.W.3d 1, 12 (Tex. 2007)(citing DeLanney, 809 S.W.2d at 494-95). The focus of the inquiry is to determine whether the injury is to the subject of the contract itself. Id. at 13. In making this inquiry, the court must consider (1) whether the claim arises from

---

[55]     Doc. 126-5, Ex. 5 to Def.'s Mot. for Summ. J., Dep. of Casey, p. 316.

the breach of a duty created by the contract or a duty imposed by law and (2) whether the injury is only the economic loss to the subject of the contract itself.  <u>See</u> <u>Formosa Plastics Corp. USA v.</u> <u>Presidio Eng'rs & Contractors, Inc.</u>, 960 S.W.2d 41, 45-47 (Tex. 1998).  The burden is on the plaintiff to establish an independent injury.  <u>Sterling Chems., Inc. v. Texaco Inc.</u>, 259 S.W.3d 793, 796 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).

The Fifth Circuit has stated that unsubstantiated assertions are not competent summary judgment evidence.  <u>Forsyth v. Barr</u>, 19 F.3d 1527, 1533 (5th Cir. 1994) (citing <u>Celotex Corp.</u>, 477 U.S. at 324).  "Summary judgment, to be sure, may be appropriate . . . if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation."  <u>Krim v.</u> <u>BancTexas Grp., Inc.</u>, 989 F.2d 1435, 1449 (5th Cir. 1993).

Here, Jinsun complains that it was defrauded because Alidad did not pay in conformity with the oral contract.  Notably, Alidad's explanation for his failure to pay sounds in contract – he claims that the stock was part of the consideration owed to him pursuant to the oral consulting contract.  Thus, the claim arises from, and is dependent on, the terms of the contract, and the injury claimed is the economic loss from the contract.  Applying the <u>Formosa</u> factors, the economic loss rule will preclude recovery under a fraud theory.

A slightly different analysis is required for Jinsun's

fraudulent-inducement claim. In <u>Formosa</u>, the Texas Supreme Court refused to apply the economic recovery rule to a claim of fraudulent inducement to a contract, even though the damages were economic in nature. <u>Formosa</u>, 960 S.W.2d at 43, 46. The court later explained that, "The duty not to fraudulently procure a contract arises from the general obligations of law rather than the contract itself, and may be asserted in tort even if the only damages are economic." <u>Tony Gullo Motors I, L.P. v. Chapa</u>, 212 S.W.3d 299, 304 (Tex. 2006). Thus, Jinsun is not limited to the benefit of the bargain damages if it can prove that it was misled as to what it was receiving from the contract.

To establish a claim of fraudulent inducement, Jinsun must show that it was induced to enter into an agreement through a misrepresentation that was: (1) false; (2) that was either known to be false when made or was asserted without knowledge of its truth; (3) that was intended to be acted upon; (4) that was relied on; and (5) that caused an injury. <u>Amouri v. Sw. Toyota, Inc.</u>, 20 S.W. 3d 165, 168-69 (Tex. App.—Texarkana 2000).

The Texas Supreme Court has stated, "A promise to do an act in the future is actionable fraud when made with the intention, design and purpose of deceiving, and with no intention of performing the act." <u>Spoljaric v. Percival Tours, Inc.</u>, 708 S.W.2d 432, 434 (Tex. 1986). The court further cautioned that a "failure to perform, standing alone, is no evidence of the promissor's intent not to

26

perform when the promise was made." Id. at 435.

Claims alleging fraudulent inducement, like fraud claims, must be pled with particularity. Bohnsack v. Varco, 668 F.3d 262, 277 (5th Cir. 2012). Here, Jinsun merely argues in the most conclusory fashion that it was fraudulently induced to enter into a stock purchase agreement based on Alidad's promise to pay and its speculation that Alidad never intended to pay. As mentioned earlier, Jinsun's only evidence of fraudulent intent is Casey's statement that Alidad has not paid for the stock.

Jinsun fails to proffer any evidence showing that Alidad's alleged promise to pay for the stock was false when made, an essential element of the claim. Without facts to support each element of the claim of fraudulent inducement, it is **RECOMMENDED** that Alidad's motion on Jinsun's fraud and fraudulent-inducement claims should be **GRANTED**.

### c. Accounting

Alidad argues that the parties do not have a fiduciary relationship and that the contract between the parties does not provide for an accounting. Alidad also argues that Jinsun has not established the factual predicate for an accounting. Jinsun responds that it is entitled to an accounting of all monies Alidad gained via sale of Luxeyard stock.

An accounting may be either a claim based in equity or a remedy sought in connection with another cause of action. Compare

Hutchings v. Chevron U.S.A., Inc., 862 S.W.2d 752, 762 (Tex. App.—El Paso 1993) (holding that an accounting is an equitable remedy for determining amount of damages) with Palmetto Lumber Co. v. Gibbs, 124 Tex. 615, 626–27, (1935) (holding that an accounting is a separate cause of action). An equitable accounting is proper when the facts and accounts presented are so complex that adequate relief may not be otherwise obtained at law. Hutchings v. Chevron U.S.A., Inc., 862 S.W.2d 752, 762 (Tex. App.—El Paso 1993).

Here, Jinsun requests an accounting of the monies received by Alidad's sale of Luxeyard stock. Jinsun does not explain why this information is so complex that adequate relief may not be obtained. In Alidad's deposition, he admitted that he made $532,805 from the sale of Luxeyard stock, relying on business records that had been provided to Jinsun.[56] It thus appears clear that Jinsun has obtained the discovery necessary to learn the profit made by Alidad on the sale of Luxeyard stock. Jinsun has not set forth any facts necessitating a separate accounting, and therefore the court **RECOMMENDS** that Alidad's motion on this issue be **GRANTED**.

### d. Constructive Trust

Alidad argues that Jinsun's constructive trust claim fails as a matter of law because Jinsun's suit is based on a breach of contract claim. Alidad notes that the stock at issue is no longer

---

[56]   See Doc. 128-2, Ex. C to Pl.'s Mot. for Partial Summ. J., Def. Dep. pp. 111–12.

in his possession, so a constructive trust is not an appropriate remedy. Jinsun responds that a constructive trust would be an appropriate remedy, and that the decision to establish a constructive trust should be left to a jury.

A constructive trust is an equitable device used by the courts of equity to remedy a wrong, especially in the property context. Wheeler v. Blacklands Prod. Credit Ass'n, 627 S.W.2d 846, 849 (Tex. App.—Ft. Worth 1982). In Texas, a constructive trust may be imposed when a defendant gains property by fraud, when a conveyance of property was performed but not intended, or when a defendant breaches a fiduciary relationship. In re: Carolin Paxson Adver., Inc., 938 F.2d 595, 597 (5th Cir. 1991).

The imposition of a constructive trust is appropriate when a plaintiff establishes that: "(1) the debtor has committed actual fraud or has committed constructive fraud through the breach of a preexisting fiduciary or confidential relationship; (2) the debtor would be unjustly enriched by retaining the proceeds of the wrong; and (3) there is a traceable res upon which to impress the trust." In re Bradley, 501 F.3d 421, 432 (5th Cir. 2007).

Jinsun argues that a constructive trust is a proper remedy because it would be unjust for Alidad to retain the shares or the proceeds of the shares of Luxeyard stock. However, Jinsun's arguments fail to establish how Alidad would be unjustly enriched in the event that a jury were to find that he breached his contract

with Jinsun.  Alidad no longer possesses stock, so there is no traceable res that the court may hold in trust.  Because Jinsun's claims are not based on appreciated value or actual possession of the stock, Jinsun does not present a claim for recovery in equity. The court therefore **RECOMMENDS** that summary judgment be **GRANTED** regarding Jinsun's constructive trust claim.

## C.  Jinsun and Third-Party Defendants' Motion for Partial Summary Judgment

Jinsun, Casey and Far East Strategies move for summary judgment on its contract claims, on Alidad's defenses of illegality and fraud, and on Alidad's counterclaims for breach of contract, quantum meruit and fraud.

### 1.  Jinsun's Contract Claims

Jinsun argues that it has conclusively proven every element of its contract claims and that the only issue left to a jury is the amount of damages caused by Alidad's breach.  Alidad responds that fact issues persist regarding the terms of the contracts, the existence of the contracts, and whether Jinsun breached one or both of the contracts.

Jinsun's evidence in support of its motion is a stock purchase agreement not signed by Alidad, dated on March 8, 2012, and an email directed to Alidad's email address on May 22, 2012, asking him to sign and return the signature page.  Jinsun argues that quasi-estoppel prevents Alidad from arguing that he did not sign

the stock purchase agreement.  Under quasi-estoppel, a party may not accept the benefits of a transaction and then subsequently take an inconsistent position to avoid obligations or effects.  <u>Hartford Fire Ins. Co. v. City of Mont Belvieu, Tex.</u>, 611 F.3d 289, 298 (5th Cir. 2010).

Alidad maintains that fact issues remain relating to the nature of the oral agreements and presents evidence that he believed that he received the shares in exchange for his consulting work.  Alidad further questions whether Jinsun has proven that an actual agreement was made, since it appears each party believed the contract was for different terms.  Alidad maintains that because these material terms of the contract are disputed, Jinsun is not entitled to summary judgment.

It is clear from the record that Jinsun has not proven its breach of stock purchase claims as a matter of law.  According to Jinsun's complaint, it entered an oral agreement with Alidad "in early 2012."[57]  This is the agreement it now alleges that Alidad breached.  An unsigned written agreement sent to Alidad months after the oral agreement does not conclusively prove the elements of the oral agreement, which are materially disputed by Alidad. Alidad has thus raised sufficient factual issues to preclude Jinsun's motion for summary judgment on this claim.

Similarly, Jinsun attempts to argue that it has conclusively

---

[57]     <u>See</u> Doc. 135, Pl.'s 2nd Am. Compl. p. 2.

proven its breach of the consulting agreement based on affidavit
testimony by Casey that the parties entered into the agreement as
discussed in an email exchange on June 7, 2012, and that Alidad
admitted he had not performed any work during a later phone call.[58]
Jinsun argues that judgment is appropriate based on these facts.

Alidad responds that there is a fact issue regarding when the
consulting agreement was reached and the details of the agreement.
He maintains that he performed under the contract and that Jinsun
breached by not paying the full amount.

As there is no written agreement between the parties and there
is a factual dispute as to when the agreement was made and whether
Alidad performed, Jinsun has not proven that Alidad breached the
consulting agreement as a matter of law.

Because Jinsun cannot prove either of its breach of contract
claims as a matter of law, the court **RECOMMENDS** that Jinsun's
motion for summary judgment be **DENIED** on its breach of contract
claims.

### 2.   Jinsun and Third-Party Defendants' Motion on Alidad's Defenses

Jinsun, Casey and Far East Strategies move for summary
judgment on Alidad's defenses of fraud and illegality.  Alidad
responds that the motion should be denied because fact issues
remain concerning his defenses. The court will consider Alidad's

---

[58]    See Doc. 127, Pl.'s Mot. for Partial Summ. J. p. 3.

fraud defense alongside his fraud counterclaim and will thus first consider Alidad's illegality defense.

A contract is illegal and thus void when it obligates a party to perform an action forbidden by law. In re OCA, Inc., 552 F.3d 413, 422 (5th Cir. 2008). Because contracts are presumed to be legal, the party challenging the contract carries the burden of proving its illegality. Id.

In support of his claim for illegality, Alidad argues that there is evidence Jinsun "orchestrated and engaged in an illegal 'pump and dump' scheme."[59] However, Alidad has not claimed that either of the contracts at issue obliged him to perform any illegal act. Alidad has not raised a genuine issue of material fact that either party was obligated by any oral agreement to perform an illegal act. The court therefore **RECOMMENDS** that Jinsun's motion for summary judgment be **GRANTED** regarding Alidad's illegality defense.

**3.  Jinsun and Third-Party Defendants' Motion on Alidad's Counterclaims**

Jinsun, Casey and Far East Strategies argue that the court should grant summary judgment on Alidad's counterclaims based on lack of evidence. Alidad's counterclaims include breach of contract, quantum meruit, and fraud or fraud in the inducement.

**a. Breach of Contract**

---

[59]    Doc. 138, Def.'s Resp. to Pl.'s Mot. for Partial Summ. J. p. 12.

33

Jinsun argues that Alidad cannot maintain a breach of contract claim because there is no evidence that Alidad performed under the contract.   Alidad responds that the consulting agreement was intended to compensate Alidad for services he had already performed.

The elements of a breach of contract claim are (1) the existence of a valid contract; (2) performance; (3) breach; and (4) damages as a result of breach.  <u>Crowder v. Scheirman</u>, 186 S.W.3d 116, 118-19 (Tex. App.—Houston [1st Dist.] 2005).  In order for an oral agreement to be binding, there must be: "(1) an offer; (2) acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding."  <u>Thornton v. Dobbs</u>, 355 S.W.3d 312, 316 (Tex. App.—Dallas 2011).

Here, Jinsun has provided evidence that on June 5, 2012, Alidad communicated with Jinsun via email, sending Jinsun a message reading, "Please find the invoice for my consulting services attached," along with an invoice for $500,000.[60]  Further, when asked in interrogatories, Alidad stated that he compensated Jinsun for the stock he received by providing consulting services.[61]

---

[60]     Doc. 128, Ex. A-5 to Doc. 127, Pl.'s Mot. for Partial Summ. J., Email Dated June 5, 2012, from Alidad to Casey.

[61]     <u>See</u> Doc. 128, Ex. 3 to Doc. 127, Pl.'s Mot. for Partial Summ. J., Def.'s. Answers to Interrogs. p. 3.

Jinsun admits that it paid Alidad $150,000 under the agreement. Accepting the above in the light most favorable to Alidad, fact issues exist whether a contract existed, what the terms of the contract were and whether Jinsun breached the contract by paying less than the agreed-upon fee. The court **RECOMMENDS** that Jinsun's motion be **DENIED** regarding Alidad's breach of contract counterclaim.

### b.  Quantum Meruit

Jinsun argues that Alidad cannot prevail on a quantum meruit claim because a contract governs the subject matter of the claim. Quantum meruit is an equitable remedy based on the implied promise to pay for accepted services. Vortt Exploration Co., Inc. v. Chevron U.S.A., Inc., 787 S.W.2d 942, 944 (Tex. 1990). To recover in quantum meruit, a party must show: (1) valuable services and/or materials were furnished; (2) to the opposing party; (3) which were accepted by the opposing party; and (4) under such circumstances as reasonably notified the opposing party that the party, in performing, expected to be paid by the opposing party. Heldenfels Bros., Inc. v. City of Corpus Christi, 832 S.W.2d 39, 41 (Tex. 1992). In general, a party may recover under quantum meruit only when there is no contract. Vortt Exploration Co., 787 S.W.2d at 944.

Jinsun argues that Alidad may not maintain a quantum meruit counterclaim because a valid contract exists. Alidad admits that

35

it is "likely that Jinsun and Alidad did not have an actual agreement."[62]   The parties disagree regarding key terms of the agreement, including whether Jinsun's payment was an advance or a payment for work already performed.   Similarly, the parties do not agree on a specific date when Alidad agreed to act as a consultant. In the event that the jury determines there was no mutual assent, and therefore no contract, Alidad may seek recovery for services rendered under a quantum meruit theory.

Jinsun has not established that Alidad cannot prevail on his quantum meruit claim as a matter of law.   The court **RECOMMENDS** that Jinsun's motion regarding Alidad's quantum meruit claim be **DENIED**.

### c. Fraud

Jinsun, Casey and Far East Strategies finally argue that the court should grant summary judgment on Alidad's fraud counterclaim because Alidad has not produced evidence of the elements of a fraud claim.   The parties raise identical arguments related to Alidad's fraud defense to Jinsun's contract claim, so the court will consider it in concert with Alidad's counterclaim.

To establish a fraud claim, a counterdefendant must establish:

(1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and

---

[62]     Doc. 138, Def.'s Resp. to Pl.'s Mot. for Partial Summ. J. p. 4.

(6) the party thereby suffered injury.

Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am., 341
S.W.3d 323, 337 (Tex. 2011).  When a counterdefendant makes a claim
for fraud, he must plead the time, place, and contents of the
representation and identify the person making such representation.
U.S. ex rel. Grubbs v. Kanneganti, 565 F.3d 180, 186 (5th Cir.
2009).

Alidad alleges that Jinsun failed to disclose the "true
purpose" of the contracts it entered into with Alidad.[63]  Alidad
does not attempt to argue that Jinsun's contracts with Alidad
constituted fraud; instead, he attempts to argue that Jinsun's
ultimate intent was to commit an illegal act.  Alidad alleges that
he did not know that Jinsun ultimately intended to commit illegal
acts based on the services he performed, but fails to list a
specific date of Jinsun's omission.

As a general rule, a Jinsun's silence regarding its intent
does not constitute fraud unless there is a duty to disclose
information.  See Bradford v. Vento, 48 S.W.3d 749, 755 (Tex.
2001).  In order to establish a duty to disclose, a party must
show:

> (1) a confidential or fiduciary relationship exists
> between the parties; or (2) one party learns later that
> his previous affirmative statement was false or
> misleading; or (3) one party knows that the other party
> is relying on a concealed fact; . . . or (4) one party

---

[63]     See Doc. 138, Def.'s Resp. to Pl.'s Mot. for Part. Summ. J., p. 14.

37

voluntarily discloses some but less than all material
facts, so that he must disclose the whole truth, i.e.,
all material facts, lest his partial disclosure convey a
false impression.

Union Pac. Res. Group v. Rhone-Poulenc, Inc., 247 F.3d 574, 586 (5th
Cir. 2001).

Here, Alidad has not established that Jinsun, Casey or Far
East Strategies had an affirmative duty to disclose their
fraudulent intent.  Additionally, Alidad has not provided factual
support for his allegation that he relied on Jinsun, Casey or Far
East Strategies' omission or that the omission caused him injury.
In sum, Alidad has failed to produce sufficient facts to maintain
a claim for fraud or to raise a fraud defense as a matter of law
against Jinsun, Casey or Far East Strategies.

The court therefore **RECOMMENDS** that Jinsun, Casey and Far East
Strategies' motion for summary judgment be **GRANTED** with respect to
Alidad's fraud counterclaim and fraud defense.

## IV.   Conclusion

Based on the foregoing, the court **RECOMMENDS** that Alidad's
Motion for Summary Judgment be **GRANTED IN PART** and **DENIED IN PART**,
and that Jinsun, Casey and Far East Strategies' Motion for Partial
Summary Judgment be **GRANTED IN PART** and **DENIED IN PART**. Jinsun's
motion for a jury trial setting is **GRANTED**.  If this recommendation
is adopted, Jinsun's breach of contract claims, Alidad's breach of
contract and quantum meruit counterclaims and Alidad's release-of-

38

claims defense will be set for trial.  The parties' non-contract claims should be dismissed.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.  Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 4th day of August, 2015.

_____
U.S. MAGISTRATE JUDGE

39